Victor B. Estrella and Artemisa Estrella v. Commissioner. Victor B. Estrella v. Commissioner. Artemisa Estrella v. Commissioner.
Estrella v. Commissioner
Docket Nos. 16802-16805.
United States Tax Court
T.C. Memo 1954-127; 1954 Tax Ct. Memo LEXIS 117; 13 T.C.M. (CCH) 800; T.C.M. (RIA) 54233; August 17, 1954, Filed *117 Earl C. Crouter, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in the income tax of the petitioners and additions to tax under section 293(b) of the Internal Revenue Code as follows: Docket No.
Year
Tax
Addition to Tax
Victor B. Estrella and Artemisa Estrella
16802
1944
$ 59,153.02
$29,576.51
16803
1945
185,297.64
92,648.82
Victor B. Estrella
16804
1946
127,229.77
63,614.89
Artemisa Estrella
16805
1946
127,229.77
63,614.89
The issues presented for determination by the pleadings are the correctness of the respondent's action (1) in not computing income from business on the basis of the receipts and expenditures as reported by petitioners in their income tax returns for the years 1944, 1945 and 1946, (2) in computing income from business, for all years, on the basis of receipts and expenditures as determined by respondent for such years, (3) in not allowing for all years deductions for interest and taxes paid and deductions for bad debts and loss sustained in such years, and (4) in determining that for all years *118 the petitioners were liable for additions to taxes under section 293(b) of the Internal Revenue Code for fraud. Findings of Fact The petitioners are husband and wife and filed joint income tax returns for 1944 and 1945. For 1946 they filed separate income tax returns, prepared on the community basis. All of the foregoing returns were filed with the collector for the district of Arizona. For a number of years prior to 1944, Victor B. Estrella, sometimes hereinafter referred to as petitioner, was a resident alien of Mexican nationality, who engaged in the wholesale fish business with places of operation in Tucson, Arizona, and Nogales, Arizona. Prior to 1944, as well as during that year, and during 1945 and 1946, the petitioner resided in Tucson. The petitioner had a "resident alien's crossing card" from the United States Immigration Service which permitted him to cross back and forth between the United States and Mexico as he saw fit and without question. Petitioner's son-in-law, George Wanless, participated in the conduct of the petitioner's business in Nogales. About 1940 an investigation was made by a representative of the Bureau of Internal Revenue *119 of the petitioner's income tax liability for the years 1935 through 1938 and of his failure to file returns for those years. As a result of the investigation the petitioner filed delinquent returns for those years and paid taxes of more than $600 thereon. During the years 1944, 1945 and 1946 the petitioner was manager of an organization known as "Federacion de Sociedades Cooperativas de la Industria Pesquera del Golfo de California, F.C.L.," sometimes hereinafter referred to as the Federation, which was a federation of cooperatives engaged in the fish industry in the Gulf of California. For his services as manager, the Federation paid the petitioner the following amounts in Mexican pesos, with the indicated equivalent in dollars for the years indicated: Year
Pesos
Dollars
1944
$ 47,525.96
$ 9,809.27
1945
59,252.13
12,229.54
1946
59,818.60
12,346.47
Total
$166,596.69
$34,385.28
The operations of the Federation began with the individual fishermen operating in the Gulf of California who had their own boats. They caught fish and brought them to the cooperative, which, in turn, with many other cooperatives, marketed the fish through the Federation. In *120 Mexico, during the years in question, all the fish which were caught in the Gulf of California were marketed through the Federation. In 1944 petitioner was general manager of the Federation and also had the exclusive right to sell all the fish of the Federation in the United States for his own account. In other words, he was general manager of the Federation, bought the fish from it and sold them for his own account. Generally, the fish were landed at a place called Rocky Point. There the petitioner picked up the fish in refrigerated trucks and hauled them to Nogales where they were subjected to Mexican and American customs procedures. Then petitioner transported them to various markets in Tucson and Phoenix, Arizona, and in Los Angeles, San Pedro and other places in California, the major market being as Los Angeles. During 1945 and 1946 the petitioner not only bought fish from the Federation but also bought from other sources. The fish imported during 1944 through 1946 were principally sea bass, shrimp and fish livers, and to a lesser degree other kinds of fish. Under date of November 7, 1946, the petitioner executed an affidavit containing the following respecting his business *121 activities and submitted it to the Bureau of Internal Revenue: "I. The fish that I transport and sell in the United States are my fish. I have never transported any fish or other commodities in the United States other than my own. "II. I purchase fish at Nogales, Sonora, Mexico; then transport them to my customers in the United States to whom they are sold. "III. I purchase my fish from: Federation of Cooperative Fishing Industry, 125 Obregon St., Nogales, Sonora, Mexico. Fishing Company of Sonora, Nogales, Sonora, Mex. VBE. "IV. A partial list of my customers is as follows: Roof Garden Fish Market, Tucson, Arizona. SonoraFish Market, Tucson, Arizona. Mercado Sea Food, Phoenix, Arizona. Central Fish Co., Los Angeles, Calif. Paladin Sea Food, Los Angeles, Calif. Standard Fishery, San Pedro, Calif. American Fisheries, San Pedro, Calif.
"V. I had no contract for purchase of fish. I purchased whatever fish I could sell at the prevailing market price. "VI. The following persons sell fish for me on a salary basis: Nolberto Barnett, 4th & Central, Los Angeles. George Wanless, 601 Morley, Nogales, Arizona. Victor M. Estrella, 1124 East 10th, Tucson, Arizona. "In addition to *122 the above, several brokerage concerns sell fish for me on a commission basis. "VII. All of my fish business has been conducted by me as an individual. I have never had any partner or partners in my business." The petitioner dealt in large quantities of fish and usually the price at which he sold them was considerably in excess of what he paid for them. Petitioner also engaged in transactions in which he sold fish at two cents per pound above the ceiling price. When agents from the Bureau asked the petitioner to produce his books and records for an investigation of his tax liability, the petitioner told them that they were in Mexico and that he would get them together and give them to them. However, he later refused to furnish them, stating that he had been advised by his attorney not to make them available. Although the petitioner had a number of bank accounts in the United States, his principal bank accounts were with banks in Mexico. Evidence as to the bank accounts in Mexico was not furnished to the agents and was not available to them in the United States. In the income tax return of the petitioners for 1944, the petitioner's business was described as the "transportation *123 of fish" from which total receipts of $11,772.64 were reported. From that amount a total of $11,123.90 was deducted as business expenses, leaving $648.74 which was reported as the net profit from the business. The return disclosed no income from any other source and showed no tax liability. From each of three of his customers, the petitioner received during 1944 from the sales of fish an amount in excess of the total receipts from business reported in the income tax return. From one of those customers, the petitioner received $114,830.50, from another $20,407.21, and from another $18,104.31. In the income tax return of the petitioners for 1945, the petitioner's business was described as the "Transportation of fish" from which total receipts of $13,324.81 were reported. From that amount a total of $11,241.79 was deducted as business expenses, leaving $2,083.02 which was reported as the net profit from the business. The return disclosed no income from any other source and showed a tax liability of $102. From a group of 18 of his customers, the petitioner received during 1945 a total of $442,191.49 from the sale of fish. In their separate income tax returns for 1946, prepared on the *124 community basis, the business of the petitioner was described as "Sea Foods" from which gross receipts of $755,163.32 were reported. From that amount a total of $748,897.63, composed of $678,934.23 shown as merchandise bought for sale and $69,963.40 shown as business expenses, was deducted, leaving $6,265.69 which was reported as the net profit from the business. One-half of the latter amount was reported in the return of each petitioner as community income. No income from any other source was disclosed by either of the returns and each return showed a tax liability of $344. In determining the deficiencies involved herein the respondent determined that the petitioners had additional and unreported income from business of $88,360.47 for 1944, $223,921.91 for 1945, and $359,124.56 for 1946. The foregoing amounts were determined by respondent as follows: 1944
Fish
Shrimp
Livers
Totals
Total imports per U.S. Customs records, lbs.
580,845
23,343
36,397
640,585
Allowance for shrinkage and spoilage, lbs.
52,276
2,101
54,377
Total pounds sold
528,569
21,242
36,397
586,208
Average selling price per lb.
.1975
.3500
2.4800
Gross receipts from imports sold
$104,392.38
$7,434.70
$90,264.56
$202,091.64
Cost of goods sold from declared value of
imports
29,002.25
6,096.66
50,751.40
85,850.31
Gross profit
$ 75,390.13
$1,338.04
$39,513.16
$116,241.33
Operating expenses allowance: American duties
$ 3,467.64
Custom brokerage
376.80
Transportation of goods to market
12,811.70
Sales brokerage
4,513.23
Administration and sales expense
6,062.75
$ 27,232.12
Net operating profit
$ 89,009.21
Net profit reported in return
648.74
Additional and unreported income
$ 88,360.47
1945
Total imports per U.S. Customs records, lbs.
2,112.525
204,106
38,129
2,354,760
Allowance for shrinkage and spoilage, lbs.
190,127
18,370
208,497
Total pounds sold
1,922,398
185,736
38,129
2,146,263
Average selling price per lb.
.1975
.3500
2.4800
Gross receipts from imports sold
$379,673.61
$65,007.60
$94,559.92
$539,241.13
Cost of goods sold from declared value of
imports
119,978.01
53,812.08
53,650.90
227,440.99
Gross profit
$259,695.60
$11,195.52
$40,909.02
$311,800.14
Operating expenses allowance: American duties
$12,611.77
Custom brokerage
1,385.07
Transportation of goods to market
47,096.40
Sales brokerage
8,524.74
Administration and sales expense
16,177.23
$ 85,795.21
Net operating profit
$226,004.93
Net profit reported in return
2,083.02
Additional and unreported income
$223,921.91
1946
Total imports per U.S. Customs records, lbs.
2,304,292
590,217
42,793
2,937,302
Allowance for shrinkage and spoilage, lbs.
207,386
53,119
260,505
Total pounds sold
2,096,906
537,098
42,793
2,676,797
Average selling price per lb.
.2200
.5197
2.4800
Gross receipts from imports sold
$461,319.32
$279,129.83
$106,126.64
$846,575.79
Cost of goods sold from declared value of
imports
168,328.05
138,296.21
62,364.18
368,988.44
Gross profit
$292,991.27
$140,833.62
$ 43,762.46
$477,587.35
Operating expense allowance: American duties
$13,756.62
Custom brokerage
1,727.66
Transportation of goods to market
58,746.04
Sales brokerage
9,919.52
Administration and sales expense
25,397.27
Freezing and storage
2,650.00
$112,197.11
Net operating profit
$365,390.24
Net profit reported in returns
6,265.68
Additional and unreported income
$359,124.56
*125 In March 1953, the petitioner, Victor B. Estrella, was tried before the United States District Court at Tucson, Arizona, for attempted evasion of income tax for 1944. On Friday, March 20, 1953, he was found guilty and the following Monday, March 23, was set as the date for sentencing. On the latter date he failed to appear and at the request of his counsel the court granted a continuance until the following day, March 24, to enable counsel to locate petitioner. The petitioner failed to appear on March 24 and the court forfeited his bail bond of $25,000 and imposed a sentence of two-years imprisonment and a fine of $5,000. Thereafter, during an investigation as to petitioner's whereabouts, petitioner's bondsman informed an investigating agent that petitioner had gone to Mexico, from where he had repaid the $25,000 bail, and that he would not return to the United States. A "block" was placed at the border crossing places so that he would be apprehended if he came back to the United States. However, so far the search for him has been in vain. The income tax returns of the petitioners for 1944, 1945 and 1946 were false and fraudulent and were made with intent to evade tax. Opinion
*126 When these proceedings were called for hearing, neither of the petitioners appeared in person or by counsel. Accordingly, a motion by respondent that his determination of the deficiencies in tax for the years in question be sustained for failure of the petitioners to prosecute was granted. That leaves for determination only the question of the correctness of the respondent's action in determining the deficiencies in addition to tax for fraud. As to these deficiencies, the respondent had the burden of proof. At the outset it is to be observed that during the years in question the petitioner, even though a resident alien, was not without experience as to income tax matters. As early as 1939 or 1940 his tax liability for the years 1935 through 1938 was investigated, and as a result he filed delinquent returns for those years. In addition, the evidence shows that in the preparation of the returns for the years 1944 through 1946 he obtained assistance from an attorney in Tucson. For each of the years involved herein the Federation paid petitioner a substantial sum as salary for his services as manager. None of the returns for those years disclose the receipt of such salary. In the *127 returns for 1944 and 1945 the business of the petitioner was described as the transportation of fish when, in fact, the petitioner was engaged in the business of importing and selling fish. In the 1944 return total receipts from business were reported as $11,772.64, whereas the petitioner received more than that amount from each of three customers who purchased fish from him. From one of the three he received approximately ten times the amount of total receipts reported. In the return for 1945 total receipts were reported as $13,324.81, whereas the petitioner received from a group of 18 of his customers a total of $442,191.49, or more than 25 times the amount of total receipts reported. In the returns for 1946 the petitioner's business was described as sea foods, which was only a slightly more accurate description than in prior years. Total receipts were reported as $755,163.32, which, on the basis of respondent's determination of gross receipts of $846,575.79, was an understatement of $91,412.47. Merchandise bought for sale was reported at $678,934.23, which, on the basis of respondent's determination of cost of goods sold of $368,988.44, was an overstatement of $309,945.79. *128 The respondent has submitted detailed evidence as to the methods followed, procedures employed, sources of information availed of, and the facts ascertained, in determining the income and deductions of the petitioners and the deficiencies in their tax for the years in question. From a consideration of such evidence, we are satisfied that such determinations are as fair and as accurate as can be made without the cooperation of the petitioner, who apparently elects to keep himself in Mexico, and without the aid of his records, which, for reasons satisfactory to himself, he appears to have maintained in Mexico rather than in the United States. From the record before us we have concluded and found as a fact that the returns of the petitioners for the years in question were false and fraudulent and were made for the purpose of evading tax. Accordingly, the action of the respondent in determining the additions to tax for fraud is sustained. Decisions will be entered for the respondent.